## SUPREME COURT.

### BENJAMIN KINNE agt. RACHEL KINNE.

The contracts and promissory notes of *married women* are still invalid at common law, when not given in the cases allowed by the statute of March 20, 1860.

The fact that the defendant, a married woman, had, at the time of giving her promissory note in suit, an expectation to receive money upon the death of her husband, upon an ante-nuptial agreement, does not make her note valid.

*Fourth Department, General Term.*

*Argued at Syracuse, January,* 1873 ; *decided at Rochester, April,* 1873.

*Before* MULLIN, *P. J.,* TALCOTT *and* E. DARWIN SMITH, *JJ.*

IRVING G VANN, *for plaintiff and appellant.*

ON the first day of April, 1869, the defendant, who at the time was a married woman, borrowed forty dollars of the plaintiff's assignor and gave her own note therefor. On the 6th day of November, 1871, the plaintiff lent the defendant, who was then a widow, the sum of twenty-six dollars, payable on demand.

This action, which was at first commenced in a justice's court, but withdrawn because service could not be obtained upon the defendant, was brought to recover said sums of money. The only question raised upon the trial was in regard to the liability of the defendant upon said promissory note, the defense being based upon the fact that at the time said note was given the defendant was a married woman.

The referee reported that the defendant was not liable upon said note and the plaintiff brings this appeal. The following facts are undisputed : That the consideration of the

note in question was the sum of forty dollars, which Polly Kinne, the plaintiff's assignor, lent to the defendant person-ally; that at the time the defendant borrowed said sum, she represented that she had interest money paid to her from her husband every year, and that there was an agreement between her and her husband that he should pay her interest on a cer-tain sum annually, and that she could do what she wished to with it, give it to her children, or anything else; that on a subsequent occasion, when said Polly Kinne lent the defend-ant $200 more, the defendant stated that she had property down east, where her brother lived, and could sell it and get the money at any time; that at about the same time the defendant tried to borrow money of different persons, stating that she was sure of having a certain amount of money the coming spring, so many thousand dollars in the spring; that she could give security on land for it.

It further appeared that the defendant, prior to her mar-riage with Esop Kinne, her last husband, entered into an ante-nuptial agreement with him, whereby upon her marriage she became entitled to $1,000 interest in his estate, which sum was to be paid to her one year after her husband's death, with interest from the date of said agreement; that her hus-band paid her annual interest on said $1,000, and took her receipt therefor; that the defendant once owned a lot of land in this state, which she held for two years and then sold. The defendant was not sworn at all, and no witness disputed the foregoing facts.

I. The defendant, a married woman, borrowed forty dollars of the plaintiff's assignor and gave her own note therefor, and she is liable thereupon, whether she had any separate estate aside from the money borrowed at the time of the transaction or not.

*Vide* section 3 of the act of April 10th, 1862, amending the seventh section of the act of March 20th, 1860 (4 *R. S.*, 515–16). The section is as follows:

§ 3. Any married woman may, while married, sue and *be*

*sued* in all matters having relation to her sole and separate property, *or which may hereafter come to her* by descent, devise, bequest, *purchase* or the *gift* or *grant* of any person, *in the same manner as if she were sole.*

By analyzing this section it naturally resolves itself into two divisions or classes of cases.

1. Any married woman may, while married, sue and be sued in all matters having relation to her sole and separate property in the same manner as if she were sole.

2. Any married woman may, while married, sue and be sued in all matters having relation to property which may come to her by descent, devise, bequest, purchase, or the gift or grant of any person, in the same manner as if she were sole.

If the note in question, therefore, is a matter having relation either to

(*a.*) The " sole and separate property " of the defendant, or

(*b.*) To property which may have come to the defendant by descent, devise, bequest, purchase, or the gift or grant of any person,

Then the defendant is liable to be sued thereupon in the same manner as if she were sole.

It is conceded that said note was given for borrowed money, which was placed in the hands of the defendant at the time the note was delivered.

Two questions, therefore, arise:

(*c.*) Was the forty dollars borrowed money after it came into the possession and under the control of the defendant as her own money, her " sole and separate property ?"

(*d.*) Was the forty dollars borrowed money after it came into the possession and under the control of the defendant as her own money, property that came to her by descent, devise, bequest, purchase, or the gift or grant of any person ?"

If *either* or *both* of these questions are answered by the court in the affirmative, then the defendant is liable on the note.

If they are *both* answered in the negative, then she is not liable, unless the plaintiff shows a further separate estate belonging to the defendant. What, then, is the sole and separate property of a married woman? It is whatever property she possesses *free from her husband's control* (*Briggs agt. Mitchell*, 60 *Barb.*, 288–314; *Albany Fire Ins. Co.* agt. *Bay*, 4 *Comst.*, 11; *Salter* agt. *Sutherland*, 4 *Alb. Law Jour.*, 52; *Rawson* agt. *Penn. R. R. Co.*, 48 *N. Y.*, 212; *Foster* agt. *Conger*, 42 *How.*, 176; *Clancy's Husband and Wife*, 251; *Finch's Law*, 29; *Hamilton* agt. *Bishop*, 8 *Yerg. R.*, 38; *Gaines* agt. *Poor*, 3 *Metc.* [*Ky.*], 507; 10 *Sim. R.*, 378; 6 *S. & Rawle's R.*, 467; 4 *R. S.*, 513, 515, 516).

The test is to ascertain whether or not the husband has any interest in or control over it, and whether or not it is liable for his debts.

The act of March 20th, 1860, entitled an act concerning the *rights* and *liabilities* of husband and wife, provides in its first section that (1) the property both real and personal which any married woman now owns;

(2.) That which comes to her by descent, devise, bequest, *gift* or *grant;*

(3.) That which she acquires by her trade, business, labor, etc.;

(4.) That which a woman, married in this state, owns at the time of her marriage, shall be and remain her sole and separate property,   \*   \*   \*   and shall not be subject to the interference or control of her husband or liable for his debts, etc.

Was this forty dollars, after it was placed in the defendant's hands, her own money, so as to be free from her husband's control?

Could a creditor of her husband's have levied upon it or compelled her to pay it over to a receiver? And could not a judgment creditor of the defendant have reached it and have compelled her to apply it on his debt? (*Leitch* agt. *Wells*, 48 *N. Y.*, 585.)

No matter what she *intended* to do with the money after she borrowed it, it was hers to do what she chose with. She could squander it or invest it; could lend it to her son or lend it to a bank.

If she had an intention at the time she borrowed it to dispose of it in a particular way, she could have changed her mind at any time and diverted it to another channel. If she intended at the time she borrowed it to let her son have it, she could notwithstanding have changed her mind at any time and have deposited it in a bank.

This change of intention could not affect the rights of the person from whom she borrowed the money. And had she deposited this money, and if it remained on deposit to her credit still, could she defend against this note?

But in addition to matters having relation to her sole and separate property, a married woman can also be sued in relation to property which may have come to her by descent, devise, bequest, *purchase*, or the *gift* or *grant* of any person.

These six ways include the only legal means of acquiring title to property that has belonged to another. If a person has any property except his own productions, through agriculture, etc., it must have been acquired in some one of these six methods.

This forty dollars, borrowed money, was acquired by *purchase*, or possibly by *gift* or *grant*. *Purchase* means the acquisition of property by a party's own act, as distinguished from acquisition by act of law (*Burrill's Law Dict.*, 842; *Steph. Com.*, 355; 4 *Kent Com.*, 373).

Britton speaks of purchasing by occupancy. He says purchase may be made even by shutting up bees, fish, or other wild animals (*ib.*). It includes every lawful mode of acquiring property by the act of the party as opposed to the act of the law (*ib.*). A *loan* (for consumption) is a transfer of personal property such as corn or money, to be consumed by the borrower, and to be returned to the lender in kind and quality (*Bouvier Law Dict.*, vol. 2, p. 156, *title Mutuum;*

*Story on Bailments*, § 228). The title to the articles bor-rowed rests in the borrower, and hence the defendant may be said to have purchased the money in question, or she may be said to have acquired the money by grant, which, as applied to personal property, is a method of transferring chattels dis-tinguished from a gift by being always founded on some con-sideration or equivalent (*Burrill's Law Dict.*, *vol.* 1, *p.* 548, *title Grant*).

In this case the consideration was the promise, express or implied, to return an equivalent in kind. This forty dollars, then, was the defendant's sole and separate property, because her husband had no control over it. She is liable on her pro-mise to repay it, because the statute declares that a married woman may sue and be sued in all matters having relation to her sole and separate property,

Further, she acquired this forty dollars by purchase or grant, as we have seen, and is hence liable, as the statute also declares that a married woman may sue and be sued in rela-tion to any property that she may acquire by grant, purchase, the same as if she were sole.

II. The defendant had a separate estate independent of the one acquired by borrowing the forty dollars.

This appears:

1. From the defendant's own statements, which are uncon-tradicted.

2. From the ante-nuptial agreement.

The defendant after making such statements, calculated if not true to mislead the plaintiff and his assignor, is estopped from claiming that she had no separate property. Moreover, by the ante-nuptial contract the defendant had an absolute interest to the extent of $1,000, with interest thereon, in the estate of her husband. This contract was ante-nuptial, and the subsequent marriage was a good consideration for it. Even if destroyed, the defendant's interest in it continued the same, for if her husband destroyed it during her absence or without her consent such destruction would not bind her, and

she could not legally consent to its destruction, for the law would presume *conclusively* that her consent was owing to the compulsion of her husband.

This was an interest that she could sell or pledge, and thereby raise money on it. The annual interest, which seems to have been paid every year, as was probably the understanding of the parties, notwithstanding the wording of the contract, was hers, free from her husband's control. Her husband's creditors could not have taken this interest from her, but her own creditors could.

III. This borrowed money benefited the separate estate of the defendant, because it at once increased the value of her estate *as a whole*. If she was worth $500 before she borrowed this money she was worth $540 after she borrowed it, subject of course to the debt created by the act of borrowing.

The law presumes that when a married woman, possessing a separate estate, borrows money, it benefits her estate, whether the use to which she actually applies it proves a benefit or an injury.

IV. The judgment appealed from should be reversed, with costs to abide the event.

EBEN BUTLER, *for defendant and respondent.*

On the first day of April, 1869, the defendant borrowed forty dollars of one Polly Kinne and gave her promissory note therefor, payable in one year from date, with interest. The defendant, Rachael Kinne, was at the time a married woman, residing with her husband at Syracuse. There is no evidence for what purpose the money was borrowed or to what use it was appropriated.

There is no evidence that the defendant had any trade or carried on any business separate from her husband. There is no evidence that the defendant had or owned any property or separate estate, but on the contrary it appears impliedly that she had none. There is no evidence that any of the money was used either directly or indirectly for her benefit.

There is no evidence that the money was loaned upon the strength of her statements or representations.

I. In order to reverse the judgment, counsel for the appellant must contend that an action at law can now be maintained against a married woman upon her promissory note the same as though she were a *feme sole*. At common law the promissory note of a married woman is absolutely void (*Barton* agt. *Beere*, 21 *How.*, 309; *Cobine* agt. *St. John*, 12 *id.*, 333; *Vansteenburgh* agt. *Hoffman*, 15 *Barb.*, 28).

II. An action is not maintainable under the laws of this state against a married woman to recover for articles sold her when she is not engaged in carrying on any trade or business, and has no separate property or estate (*Brown* agt. *Herman*, 14 *Abb.*, 395; *Schmitt* agt. *Casta*, 3 *ib.* [*N. S.*], 188; *Barton* agt. *Beere*, 21 *How.*, 309).

III. In order to maintain this action the plaintiff must show affirmatively that the debt was contracted either for the purpose of carrying on a separate trade or business, or for the benefit of her separate estate, or for her own benefit upon the credit of her separate estate (*Yale* agt. *Dederer*, 18 *N. Y.*, 265; *S. C.*, 22 *ib.*, 450; *Owen* agt. *Cawley*, 36 *ib.*, 603; *Ballin* agt. *Dillaye*, 37 *ib.*, 38; *White* agt. *McNett*, 33 *ib.*, 371).

*By the Court*, SMITH, *J.*—This action, so far as any question is raised in it for the decision of the court, was brought upon a promissory note of forty dollars, made by the defendant, when, as the referee finds, she was a married woman and had no separate estate, and was not engaged in any business separate from her husband. The contracts of married women are still invalid at common law, when not given in the cases allowed by the statute of March 20th, 1860, entitled "An act concerning the rights and liabilities of husband and wife." This note is not saved by this or any other statute. The fact that the defendant had at the time an expectation to receive money upon the death of her husband, upon an ante-

Kinne agt. Kinne.

nuptial agreement, does not vary the case or make the note valid. It was clearly void when given, and the decision of the referee holding it void was clearly right. The judgment should be affirmed.

Judgment affirmed.

(This case is now in the Court of Appeals.)